**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-cr-00104 |
| | ) | |
| CHIKOSI LEGINS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE THE USE OF IMPROPER
"BAD CHARACTER" AND IMPEACHMENT EVIDENCE**

COMES NOW the United States of America, by and through the undersigned attorneys, and respectfully moves this Court to preclude the defense from offering improper "bad character" evidence and improper impeachment evidence during cross-examination of the government's witnesses. Specifically, the government anticipates that the defendant may attempt to attack the credibility of the victim or other witnesses through the improper use of prior convictions, arrests, and other specific instances of "bad" conduct; sexual history and predisposition; and out-of-court statements. The Federal Rules of Evidence and relevant case law regulate both the content and form of character evidence and evidence offered for purposes of impeachment. Under the Federal Rules and the circumstances presented here, the defendant should not be permitted to improperly introduce, or refer to in argument, any evidence of the victim's or other witnesses' "bad" character.

**Factual Background**

Defendant Chikosi Legins was a correctional officer at the Federal Correctional Institution at Petersburg (FCI Petersburg). On July 24, 2019, an Eastern District of Virginia grand jury returned an indictment charging the defendant, in Count 1, with willfully depriving inmate B.L.

of the right to be free from cruel and unusual punishment. Specifically, the indictment charges that, on or about May 10, 2018, the defendant, while acting under color of law, used his penis to penetrate B.L.'s mouth and anus against B.L.'s will. The remaining counts of the indictment charge the defendant with aggravated sexual abuse and sexual abuse of a ward in connection with the same incident, sexual abuse of a ward for an earlier incident, and making false statements to federal agents about these incidents.

Additionally, on October 28, 2019, the Court granted the government's motion to admit evidence of other sexual assaults by the defendant pursuant to Federal Rule of Evidence 413. *See* Dk No. 39. The government anticipates that this evidence will show that Victim G.L. was in a sexual relationship with the defendant for several months while G.L. was incarcerated at FCI Petersburg and the defendant was a correctional officer there. G.L. also engaged in a sexual relationship with a second correctional officer while G.L. was incarcerated. The evidence will also show that the defendant pressured, coerced, and forced Victim D.N into sex acts with the defendant while D.N. was incarcerated at FCI Petersburg and the defendant was a correctional officer at FCI Petersburg.

During the investigation of this case, the defendant gave a voluntary interview to federal agents during which he stated that he had never engaged in a sexual act with any inmate at any time at FCI Petersburg. The defendant also told the agents that around the time of the incident, he had masturbated in an officer-only prison bathroom. In his conversations with another correctional officer, the defendant further stated that he had seen inmates (including B.L.) in that same bathroom after the defendant had masturbated in it, and theorized that those inmates may have collected his DNA from the bathroom.

A. **The Victim's Criminal and Disciplinary History**

The victim's criminal history includes the 2015 federal felony convictions for which he was incarcerated at the time of the charged conduct—aggravated identity theft, bank fraud, and use of an unauthorized access device—and various state convictions. These state convictions include felony convictions: six convictions for probation violations from 2011, 2012, and 2017; identity theft convictions and a possessing forging instruments conviction from 2010; and 2007 convictions for possessing a forging instrument, forging or uttering, failure to appear, issuing bad checks, and forging public records (all of which resulted in periods of confinement that ended within the last ten years). The state convictions also include misdemeanor convictions: 2017 convictions for failure to appear, driving while intoxicated, and refusing a blood or breath test; 2013 conviction for identity theft; and 2004 or 2005 convictions for prostitution, petit larceny, trespassing, and identity fraud; and various moving violations.[1]

B.L.'s disciplinary history includes a 2019 write-up for allegedly threatening an officer at the Federal Correctional Institution (FCI) at McDowell, West Virginia, the facility to which B.L. was eventually transferred after reporting the defendant's misconduct. According to B.L., after he applied for a job in the kitchen at McDowell, another inmate told him that the male correctional officer in charge would not hire him because B.L. had "lied on a cop." B.L. understood this comment to refer to his allegations against the defendant in this case. When that same officer's wife, who is also a correctional officer, later accused Lemagne of throwing food in the mess hall, Lemagne told her that she and her husband needed to stop harassing him. The female officer

---

[1] B.L.'s National Crime Information Center (NCIC) Report indicates that he was charged with state misdemeanor fraud, forgery, and obstruction of justice violations in 2007 and federal (United States Postal Service) felony obstruction of correspondence and fraud violations in 2016. The disposition for the USPS charges is unknown, while Virginia state misdemeanor records are purged after ten years. *See* Va. Code Ann. §§ 16.1-69.55, 16.1-16.57 (West 2019).

viewed that comment as a threat against her family, and disciplined B.L. Also, according to some witnesses, B.L. modified his prison-issued uniform in violation of prison regulations.

### B. Physical Evidence

Federal investigators collected and analyzed physical evidence during the investigation of this case. Analysis of the DNA evidence from a rape kit and from certain articles of the victim's clothing provided strong support for inclusion of the defendant as a contributor of the DNA.

### C. Comments by A.E. and Others

During the investigation of this case, several federal inmates came forward with what they claimed was relevant information about B.L. These witnesses admitted that they had no personal knowledge of the sexual contact between the defendant and the victim on March 16 or May 10, 2018, but claimed to have heard or overheard the victim or other witnesses make, or refrain from making, related statements. One witness, M.S., stated that he saw the victim, B.L., after the defendant's May 10, 2018 assault, and that M.S. inferred that B.L. had not been assaulted because B.L. did not alert other inmates of the assault. Another witness, D.S., stated that he believed that the defendant had been wrongfully accused because he heard another inmate, R.J., complaining that the defendant should have been suspended and that it was unfair for B.L. to instead be sent to another facility. According to D.S., R.J. also said B.L. could have been entitled to a "payout."

A third inmate, A.E., came forward with hearsay statements he attributed to B.L. and admitted that he (A.E.) hoped for a reduced sentence or other benefit in exchange for this information. First, A.E. asserted that B.L. asked for A.E.'s help researching health care fraud cases in the prison library. A.E. initially claimed that B.L. said that he sought such research assistance because the next time he got "locked up" he wanted to "do it big," but A.E. later admitted that B.L. had *not* said that he wanted to perpetrate a health care fraud. A.E. also admitted

that he had lied to B.L. by claiming that he had special knowledge of health care fraud. (B.L. told investigators that he did not ask A.E. for research help but did talk to A.E. about health care cases, because B.L. is interested in opening a home health care business upon his release.). A.E., who initially described B.L. as a friend, also asserted that he had had sex with B.L. on multiple occasions while the two were incarcerated at Petersburg. (B.L. denied having had a sexual relationship with A.E.).

Another inmate, R.F., also offered hearsay evidence about B.L. Specifically, R.F. said that approximately a week before the May incident, he overheard B.L. say that he would have sex with a guard to reduce his sentence. R.F. also said that he heard B.L. say that he had once "twerked [shook] his butt" at an officer (not the defendant) to try to embarrass that officer, who had a reputation for conducting inappropriate pat-downs. R.F. and other witnesses have also said that they believe B.L. has gluteal implants.

## Argument

The government anticipates that the defense may seek to offer evidence or argue that the victim or other witnesses[2] in this case have a dishonest or otherwise "bad" character by introducing evidence regarding the inmates' criminal history, disciplinary record, and other specific acts. Evidence of such prior "bad acts" are inadmissible under the Federal Rules of Evidence and Fourth Circuit precedent. First, while some of the victim's prior convictions may be admissible to attack his credibility, many are not and should be precluded. Second, aspects of the victim's criminal and disciplinary history constitute inadmissible bad character evidence under Federal Rule of Evidence 404(a), because the evidence does not relate to a "pertinent," or relevant, character trait of the victim. Further, even if the evidence related to a pertinent trait,

---

[2] The United States' motion focuses on the victim in this case, but the same analysis applies to other witnesses the United States may call.

5

evidence of the victim's specific acts of misconduct would still be inadmissible because Rule 405 allows only reputation or opinion evidence; the Rule prohibits the introduction of evidence relating to specific instances reflecting the character trait.  Additionally, even if evidence of the victim's character were both pertinent and offered in the proper form, such evidence should still be precluded, pursuant to Rule 403, because the minimal probative value of such evidence would be substantially outweighed by the risk of unfair prejudice, the danger of misleading and confusing the jury, and the risk of inviting jury nullification.  Finally, evidence offered by the defendant regarding the victim's sexual history or predisposition, and other irrelevant, prejudicial hearsay evidence about the victim should be excluded.

### A. Impeachment with Criminal History

If the victim testifies, the defendant may attempt to impeach his testimony by offering evidence or argument regarding his prior convictions.[3]  While some such evidence may be admissible, the Federal Rules sharply limit the amount and type of evidence and argument the jury may consider.

First, most of B.L.'s misdemeanor convictions may not be used to attack his credibility, because they do not involve dishonesty or a false statement.[4]  Rule 609 disallows reference to misdemeanor convictions for this purpose except those convictions for which the Court "can readily determine that establishing the elements of the crime required proving—or the witness's

---

[3]  If a witness does not testify, the defendant may not offer character evidence or related argument under Rules 607, 608, or 609 for that witness. *See, e.g.*, *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004) (under the Federal Rules of Evidence, "the term 'witness' appears to refer solely to someone whose testimony is actually offered as evidence at trial . . . ."); *United States v. Johnson*, 872 F.2d 612, 619 (5th Cir. 1989) (a particular victim cannot be impeached until that victim's statement is before the jury).

[4]  The government does not contest that the victim's 2013 misdemeanor conviction for identity theft, Va. Code. Ann. § 18.2-186.3 (West 2019), is admissible to attack the victim's credibility.

admitting—a dishonest act or false statement." Fed. R. Evid. 609; *see, e.g.*, *United States v. Morrison*, 92 F. App'x 939, 941 (4th Cir. 2004) ("Generally, a prior misdemeanor conviction is admissible under the rule for attacking credibility only if the crime involved dishonesty or false statement."); *United States v. Howell*, 166 F.3d 335 (4th Cir. 1998) ("Fed. R. Evid. 609 limits impeachment through a witness' prior convictions to felony convictions or to convictions bearing on truth and veracity.").

B.L.'s 2017 Virginia misdemeanor convictions for failure to appear, Va. Code. Ann. § 19.2-128 (West 2019); driving while intoxicated, *id.* § 18.2-266; and refusing a blood or breath test, *id.* § 18.2-268.3, are inadmissible to attack the victim's credibility, because the elements of these crimes do not involve a dishonest act or false statement. The same is true of B.L.'s 2005 misdemeanor convictions for prostitution, *id.* § 18.2-346, and trespassing, *id.* § 18.2-119.[5] B.L.'s 2013 conviction for petit larceny, *id.* § 18.2-96, is inadmissible for the same reason. *See id.* (defining elements as "larceny from the person of another of money or other thing of value of less than $5" or "simple larceny not from the person of another of goods and chattels of the value of less than $500"); *United States v. Edge*, 576 F. App'x 275, 277 (4th Cir. 2014) (holding that North Carolina larceny conviction was not a crime involving dishonesty or a false statement where elements were "(1) taking the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of the property permanently"); *Acey v. Commonwealth*, 511 S.E.2d 429, 431 (Va. Ct. App. 1999) ("Larceny is the wrongful taking of the goods of another without the owner's consent and with the intention to permanently deprive

---

[5] Additionally, and as discussed below, because more than ten years have passed since B.L.'s conviction or confinement for these offenses, they are inadmissible unless the defendant provides "reasonable written notice of the intent to use [that conviction]," which he has not, and is able to demonstrate that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

the owner of possession of the goods.") (internal quotation marks omitted).

Second, some of B.L.'s convictions, including a 2005 misdemeanor conviction for identity fraud, should not be admitted because "more than 10 years have passed since the witness's conviction or release from confinement for [the conviction]," and the defendant has not offered reasonable written notice of his intent to use this conviction. Fed. R. Evid. 609(b). Even if the defendant had done so, the conviction should not be admitted because the defendant cannot show that the conviction's "probative value . . . substantially outweighs its prejudicial effect." *Id.* Rule 609(b) presumptively weighs against admission of such stale convictions, and the Fourth Circuit has held that the Rule "made it crystalline that the District Court [is] only to depart from the prohibition against the use for impeachment purposes of convictions more than ten years old 'very rarely and only in exceptional circumstances.'" *United States v. Beahm*, 664 F.2d 414, 417 (4th Cir. 1981) (quoting *United States v. Cavender*, 578 F.2d 528, 530 (4th Cir. 1978). No exceptional circumstances apply to allow the defendant to overcome this "stringent" presumption. *Id.* at 418; *see also, e.g.*, *United States v. Deans*, 210 F.3d 362 (4th Cir. 2000) (per curiam) (upholding district court's exclusion of government witness's bad-check convictions).

Third, any arrests or charges that did *not* result in conviction cannot be used to attack B.L.'s (or any other witness's) credibility. *See, e.g.*, *United States v. Williams*, 986 F.2d 86, 89 & n.5 (4th Cir. 1993) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.") (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948)); *United States v. Chance*, 306 F.3d 356, 385 (6th Cir. 2002) ("[A] witness may not be impeached by evidence that he or she was indicted for a crime, since an indictment is not any evidence of guilt.").

Finally, while the fact of B.L.'s felony convictions from the last ten years may be used to

attack his credibility pursuant to Rule 609(a)(1)(A), "inquiry on cross-examination into related matters such as the details of the offense is improper." *United States v. Kusic*, 17 F.3d 1435 (4th Cir. 1994) (per curiam). Accordingly, the Court should preclude the defendant from inquiring into the details of B.L.'s felony history beyond the date, offense, and felony status of his convictions. *See also, e.g.*, *Christovich v. Pierce*, 59 F. App'x 543, 546–47 (4th Cir. 2003) (while "the date, offense, and punishment related to [the] conviction[s]" are admissible under the Rule, "the nature of the felonies, when they occurred, and their details" are not) (internal quotation marks omitted) (quoting *United States v. Samuel*, 431 F.2d 610, 613 (4th Cir.1970)); *United States v. Albers*, 93 F.3d 1469, 1480 (10th Cir. 1996) (stating that "only the prior conviction, its general nature, and punishment of felony range" are admissible under the Rule).

### B. Impeachment with Specific Prior Acts

B.L.'s specific prior "bad" acts—including acts for which he was disciplined as a federal inmate—are improper impeachment evidence and should be excluded, because they do not pertain to a "pertinent" trait.

Rule 404(a) of the Federal Rules of Evidence generally prohibits evidence of a person's character to prove that the person acted in conformity with the character on a particular occasion. This Rule is "based upon the assumption that such evidence is of slight probative value yet very prejudicial." *Reyes v. Missouri Pacific Railroad Company*, 589 F.2d 791, 793 (5th Cir. 1979). As the Advisory Committee's Notes to the Federal Rules of Evidence explain, the admission of character evidence is highly disfavored, because:

> [C]haracter evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

9

Fed. R. Evid. 404, Advisory Committee's note.  This is particularly true regarding evidence of a victim's character because "[l]earning of the victim's bad character could lead the jury to think the victim merely 'got what he deserved' and to acquit for that reason." *McCormick on Evidence*, § 193 at 572 (Cleary ed. 1984).

Rule 404's general prohibition against character evidence contains three exceptions, one of which governs the admissibility of character evidence relating to the victim.[6]  *See* Fed. R. Evid. 404(a)(2).  The exception concerning the character of the victim specifies that such evidence is admissible only if it relates to a "pertinent" character trait.  *Id.*  A pertinent character trait is defined as one that is "relevant."  *See, e.g.*, *United States v. Covington*, 155 F.3d 561 (4th Cir. 1998) (per curiam) (evidence of witness's trait properly excluded because it was not "directly relevant" to case).  For example, in cases in which the defendant is charged with assaultive behavior such that self-defense is potentially at issue, the victim's character for violence or dangerousness may be relevant and admissible.  *See id.*; *see also, e.g.*, *United States v. Greschner*, 647 F.2d 740, 741 (7th Cir. 1981); *Perrin v. Anderson*, 784 F.2d 1040 (10th Cir. 1986).  B.L.'s disciplinary history and any violent or disruptive character it suggests, including the incident in which he allegedly threatened a correctional officer, however, is irrelevant to any charge or defense in this sexual misconduct case and should therefore be excluded.  *See, e.g.*, *Covington,* 155 F.3d at 561 (evidence of witness's violent character properly excluded where defendant offered alibi defense rather than self-defense theory).

Even if such evidence were pertinent, specific violations of prison regulations or other "bad acts" are inadmissible because Federal Rule of Evidence 405(a) generally limits the form of

---

[6]  Rule 404(a)(2) contains an exception for character evidence concerning the defendant and Rule 404(a)(3) contains an exception for character evidence concerning a witness.  The latter Rule is discussed *supra*.

10

character evidence to "testimony as to reputation or [] testimony in the form of an opinion." Fed. R. Evid. 405(a). Proof of specific instances of conduct is not permitted. *See id.; see also, e.g.*, *Perrin*, 784 F.2d at 1045 ("When character is used circumstantially, only reputation and opinion are acceptable forms of proof."). The only exception permitting specific instances of conduct to prove character applies to cases in which the character trait at issue is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). Violent acts, disciplinary infractions, health care fraud research, and other specific acts are thus inadmissible, because they do not pertain to an essential element of the civil rights, sexual abuse, or obstruction charges in this case, nor do they pertain to the defendant's planted-DNA defense theory.

Thus, even if the victim's prior specific acts reflected a character for dishonesty or some other bad quality, and the defendant established a basis for this evidence being relevant, the defendant would still be limited to proving the victim's character through testimony as to the victim's reputation or testimony in the form of an opinion about the victim's character. The defendant would not be permitted, pursuant to Rule 405, to introduce evidence as to any specific instances of misconduct committed by the victim. Even in the limited circumstances in which character evidence is admissible, circumstantial evidence that the victim acted in conformity with a pertinent character trait may not be proved by instances of specific conduct.

### C. The Victims' Sexual History or Predisposition

The government anticipates that the defendant may attempt to elicit evidence about B.L.'s sexual history, such as other inmates' opinion regarding the victim's sexual history or proclivities, or allegations about the victim's specific sexual acts with other inmates or officers. Additionally, the government anticipates that the defendant may also attempt to elicit evidence about the sexual histories, proclivities, or acts of witnesses whose testimony the Court has admitted under Federal

Rule of Evidence 413.  The government requests that the Court preclude all such evidence under Federal Rule of Evidence 412.

Under that Rule, the defendant may not seek to admit reputation or opinion evidence about a victim's past, current, or future sexual behavior or predisposition.  *See* Fed. R. Evid. 412(a) (generally barring evidence offered to prove "that a victim engaged in other sexual behavior" or to prove "a victim's sexual predisposition"); *United States v. Saunders*, 943 F.2d 388, 391 (4th Cir. 1991) (explaining that Rule excepts only certain specific-acts evidence).  Accordingly, other inmates' or officers' opinions about B.L.'s or other victims' predisposition towards sex with other inmates or officers, or his past sexual relationships, is inadmissible.  *See also* Fed. R. Evid. 412 advisory committee's note ("Rule 412 extends to 'pattern' witnesses in both criminal and civil cases whose testimony about other instances of sexual misconduct by the person accused is otherwise admissible.").

Specific-acts evidence about victims' past sexual behavior or predisposition is admissible only if offered to prove that someone other than the defendant was the source of physical evidence, or—with respect to specific acts involving a victim and the defendant—consent, or where the exclusion of such evidence would violate the defendant's constitutional rights.  *See* Fed. R. Evid. 412(b) (excepting these types of evidence); *Saunders*, 943 F.2d at 391 ("The defendant has a constitutional right to present admissible evidence that is probative of his innocence by showing the government's failure to prove the offense charged, by establishing a defense, or by attacking the credibility or fair mindedness of a witness.").

Accordingly, specific-acts evidence regarding victims' sexual history is inadmissible, unless the defendant:  (1) alleges that, contrary to the government's laboratory analysis, someone other than the defendant was the source of the relevant DNA in this case; (2) alleges that, contrary

to the defendant's own account to government investigators and other witnesses, the charged sex acts or sex acts alleged by Rule 413 witnesses occurred but were consented to by the victims; or (3) there is a constitutional basis for the admission of such evidence.

### D. The Victim's Out-of-Court Statements

The government anticipates that the defendant may improperly attempt to introduce hearsay statements attributed to the victim by other witnesses. It is, of course, "axiomatic that hearsay evidence is inadmissible unless a hearsay exception applies." *United States v. Habteyes*, 356 F. Supp. 3d 573, 586 (E.D. Va. 2018) (citing Fed. R. Evid. 802); *see also, e.g.*, *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975) ("[P]rior unsworn statements of a witness are mere hearsay and are, as such, generally inadmissible as affirmative proof."). While Federal Rule of Evidence 613 allows the defendant to impeach the victim with his own prior statements under some circumstances, some of the inmate statements the defendant may attempt to use for impeachment in this case do not meet the foundational requirements of Rule 613. Even if they do, extrinsic evidence of such statements may only be introduced under limited circumstances.

First, the Rule "requires that a prior statement be inconsistent." *United States v. Young*, 248 F.3d 260, 267 (4th Cir. 2001). Although "the contradiction need not be in plain terms," the proffered testimony must "by what it says or by what it omits to say afford [] some indication that the fact was different from the testimony of the witness whom it sought to contradict." *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988). M.S.'s description of B.L.'s failure to alert other inmates after the May assault, for example, does not *contradict* B.L.'s later reporting of the assault and its aftermath and is therefore not inconsistent.

Second, "[a]nother foundational element under 613(b) is that the inconsistent statement must have been made by the witness." *United States v. Barile*, 286 F.3d 749, 755 (4th Cir. 2002).

13

Statements such as that offered by D.S., who claimed that he heard R.J. make statements about B.L., cannot be used to impeach B.L.

Finally, even if the defendant could successfully meet the prerequisites for use of a statement and offer it in the proper form, *see* Fed. R. Evid. 613(b), the court should still exclude impeachment evidence "when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Barile*, 286 F.3d at 756 (quoting Fed. R. Evid. 403). A.E.'s testimony about B.L.'s alleged statements about health care fraud is highly prejudicial and has little probative value. Even if, as A.E. at points asserted, B.L. was interested in perpetrating health care fraud upon his release from prison, those plans are unrelated to the sexual misconduct allegations in this case.[7] The same is true of R.F.'s testimony: The defendant has not raised a defense of consent; to the contrary, the defendant has denied that he ever had sex with any inmate at any time. Even if – *solely arguendo* – B.L. *had* said that he would be willing to have sex with an officer if he could earn a reduced sentence as a result, or even if B.L. said that he had previously "twerked" to embarrass an officer, there is no allegation in this case that B.L. willingly had sex with the defendant.

---

[7] Additionally, and as explained above, A.E.'s allegation regarding B.L.'s research regarding fraud is inadmissible.

14

## Conclusion

For the foregoing reasons, the government respectfully requests that this Court enter an order prohibiting the defendant from offering, soliciting, or referencing in argument impermissible "bad character" evidence regarding the victim or any other witness.

Respectfully Submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____/s/_____
Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia  23219
Phone: 804-819-5400
Fax:    804-771-2316
Email: Thomas.A.Garnett@usdoj.gov

_____
Kathryn E. Gilbert
Trial Attorney
Civil Rights Division

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 21st day of November, 2019, I electronically filed the foregoing motion using the Court's CM/ECF system, which will send an electronic notification of such filing (NEF) to all counsel of record.

/s/
Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Email: Thomas.A.Garnett@usdoj.gov