## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:19CR104-DJN |
| | ) | |
| v. | ) | |
| | ) | |
| CHIKOSI LEGINS, | ) | |
| | ) | |
| *Defendant.* | ) | |

### TRIAL BRIEF FOR THE UNITED STATES

COMES NOW the United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, Thomas A. Garnett, Assistant United States Attorney, and Kathryn E. Gilbert, Trial Attorney, and submits this trial brief in accordance with this Court's Order entered on November 7, 2019.

### Procedural Background

On July 24, 2019, the grand jury returned a five-count indictment against defendant Chikosi Legins, who was a correctional officer at the Federal Correctional Institution at Petersburg (FCI Petersburg). The Indictment charges the defendant with forcibly orally and anally raping an inmate, B.L., on one occasion; penetrating B.L.'s mouth with his penis on another occasion; and lying about these acts afterwards to federal agents. Dkt. 3.

On October 19, 2019, the Court granted the United States' motion to admit evidence of the defendant's prior alleged sexual assaults against inmates pursuant to Federal Rule of Evidence 413. Dkt. 41. Trial is set for February 6, 2010. Dkt. 43. The parties expect trial to last no more than five days.

1

**Factual Background**

On May 10, 2018, inmate B.L. reported to FCI Petersburg staff that the defendant had raped him, minutes before, in a locked, unmonitored area between two inmate housing units. Specifically, B.L. said that the defendant had violently anally and orally raped him.   B.L. signed a written affidavit describing the assault and asserting that the defendant had also forced him to perform oral sex in March 2018.   Surveillance footage shows B.L. and the defendant entering the area in question and emerging approximately six minutes later.

While B.L. was reporting the assault, the defendant attempted to contact officers who had spoken with B.L.   Immediately after the assault, the defendant asked other officers about B.L.'s whereabouts; repeatedly called the Lieutenant's Office while B.L. was there reporting the assault; yelled across the compound at an officer escorting B.L. from the medical unit; and called the medical unit while B.L. was undergoing a medical assessment following the assault. The defendant later asked another officer to write a false report about the incident.

B.L. described both assaults to prison officials and medical professionals, including a paramedic and psychologist at FCI Petersburg and two sexual assault nurse examiners at a Richmond hospital.   The sexual assault nurse examiners conducted a rape kit, including the collection of an anorectal swab.   The Federal Bureau of Investigation (FBI) Laboratory analyzed DNA obtained from that swab and concluded, with the laboratory's highest level of certainty, that the DNA matched the defendant.   The FBI Laboratory also analyzed DNA collected from B.L.'s shorts and jock strap immediately following the May 2018 incident; and from a sweatshirt that B.L. told officials he was wearing during the March 2018 incident.   The FBI Laboratory concluded that DNA recovered from these items also matched the defendant.

The defendant gave a voluntary, recorded statement to federal agents in which he first

asserted that he did not commit the alleged acts.   He then claimed that he could not have committed the alleged acts because he suffers from erectile dysfunction.   He then claimed that if his DNA was found in the area of the office, it was because he had previously masturbated in an officer-only bathroom attached to the office because he had come to work with an erection after taking medication to treat his erectile dysfunction.   The defendant told another correctional officer the same story but claimed additionally that he had seen B.L. and another inmate in that same officer-only bathroom around the time of the incident.

During the course of the government's investigation of the charged conduct, the government identified two additional inmates, D.N. and G.L., who alleged that the defendant had sexually abused them.   B.L., D.N., and G.L. are transgender.

### **The Charges**

I.     _Count One: Deprivation of Rights Under Color of Law (18 U.S.C. § 242)_

The defendant is charged with one count of violating B.L.'s constitutional rights while acting under color of law.   To convict the defendant of Count One, the United States must prove beyond a reasonable doubt that:

(1)  The defendant deprived B.L. of a right which is secured or protected by the Constitution or laws of the United States;

(2)  The defendant acted under color of law when depriving B.L. of a constitutional right; and

(3)  The defendant acted willfully to deprive B.L. of such right.

_United States v. Cowden_, 882 F. 3d 464, 474 (4th Cir. 2018) ("To obtain a conviction for deprivation of rights under color of law in violation of 18 U.S.C. § 242, the government must show

that the defendant (1) willfully (2) deprived another individual of a constitutional right (3) while acting under color of law.").

    A.    <u>First Element: Deprivation of Rights</u>

Sexual abuse of a prison inmate by a correctional officer constitutes a violation of the Eighth Amendment.  *See, e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (recognizing as well-established "the Eighth Amendment right of prisoners to be free from sexual abuse"); *Smith v. Cochran*, 339 F.3d 1205, 1212–13 (10th Cir. 2003).  As the Tenth Circuit has explained, sexual abuse by a correctional officer satisfies both the objective and subjective components of an Eighth Amendment violation, because "the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *Smith*, 339 F.3d at 1212–13.  This conclusion is supported by Supreme Court precedent.  In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that officers' failure to protect inmates from sexual assault could violate the Eighth Amendment.  *Id.* at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal quotation marks omitted).  If officers' failure to protect inmates from sexual assault violates the Eighth Amendment, an officer's direct perpetration of sexual assault must also violate the Eighth Amendment.  *See Smith,* 339 F.3d at 1213 ("Sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.").

The Fourth Circuit has not apparently directly analyzed the issue, but district courts within the circuit have reached the same conclusion.  *See, e.g.*, *Morton v. Johnson*, No. 7:13CV00496, 2015 WL 4470104, at *6 (W.D. Va. July 21, 2015) ("Criminal sexual battery is neither a legitimate part of [an inmate's] punishment nor compatible with contemporary standards of decency.");

*Walker v. Durham*, No. 5:12-CT-3186-BO, 2014 WL 4728719, at *6 (E.D.N.C. Sept. 23, 2014) ("Sexual . . . assault of an inmate by a correctional officer violates the Eighth Amendment.   Such behavior has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."); *Carr v. Hazelwood*, No. CIV.A. 7:07CV00001, 2007 WL 4410694, at *3 (W.D. Va. Dec. 14, 2007) ("In cases of sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm.") (internal quotation marks omitted).

The government anticipates that the evidence at trial will show that the defendant sexually abused B.L. by using his penis to penetrate B.L.'s mouth and anus against B.L.'s will.   Among other evidence, the United States will present (1) evidence that DNA matching the defendant was found on an anorectal swab of the victim and inside the victim's shorts and jock strap; (2) the victim's testimony; (3) the testimony of medical professionals to whom the victim reported the attack; (4) correctional officers who witnessed the defendant's apparent efforts to intimidate the victim out of reporting the incident and to cover up the incident; and (5) the defendant's own demonstrably false statements about the incident.

B.   <u>Second Element: Color of Law</u>

Abuse of power by a correctional officer acting pursuant to his official duties constitutes action "under color of law."   *See Screws v. United States*, 325 U.S. 91, 108, 111 (1945) ("He who acts under 'color' of law may be a federal officer or a state officer . . . . It is clear that under 'color' of law means under 'pretense' of law . . . . Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."); *Jennings v. University of North Carolina*, 482 F.3d 686, 701 (4th Cir. 2007) ("State employment is generally

sufficient to render the defendant a state actor, and a defendant necessarily acts under color of state law when he abuses the position given to him by the State.") (internal quotation marks omitted).

The government anticipates that this element will be undisputed.   The evidence will show that at all relevant times, the defendant was acting as a correctional officer at FCI-Petersburg.

C.      Third Element: Willfully

The government must prove that the defendant acted voluntarily and intentionally, with the specific intent to do something the law forbids, when he committed the acts alleged in the Indictment.   *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018) ("To satisfy the element of 'willful' conduct, the government must prove that the defendant acted with the particular purpose of violating a protected right made definite by the rule of law or recklessly disregarded the risk that he would do so.").   The government's evidence of willfulness includes the victim's testimony, evidence regarding officer training on the Prison Rape Elimination Act (PREA), evidence of the defendant's efforts to cover up his charged and uncharged acts, and evidence of his sexual abuse of victims D.N. and G.L.

D.      Additional Findings: Bodily Injury and Aggravated Sexual Abuse and Attempted
        Aggravated Sexual Abuse

Count One is punishable as a felony if the government can also establish that the offense caused bodily injury or involved aggravated sexual abuse or attempted aggravated sexual abuse. *See* 18 U.S.C. § 242.   The government anticipates that its evidence will establish both.   First, the victim's testimony and the testimony of medical officers will demonstrate that B.L. suffered pain and bruises as a result of the defendant's actions, and thus satisfies the bodily injury element.   *See* 18 U.S.C. §§ 831(f)(5) (defining "bodily injury" to mean "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member,

6

organ or mental faculty; or (E) any other injury to the body, no matter how temporary"), 1365(h)(4) (same), 1515(a)(5) (same), 1864(d)(2) (same).   Second, the victim's testimony, and evidence corroborating his account, will demonstrate that the defendant used force to engage in a sexual act with B.L., as described in Count Two below.   *See* 18 U.S.C. §§ 2241(a) (defining aggravated sexual abuse), 2246(2) (defining "sexual act" for purposes of § 2241(a)).

II.     *Count Two: Aggravated Sexual Abuse and Attempted Aggravated Sexual Abuse*

The defendant is charged in Count Two with one count of aggravated sexual abuse and attempted aggravated sexual abuse.   To convict defendant of Count Two, the United States must prove beyond a reasonable doubt that:

(1) The defendant knowingly caused B.L. to engage in a sexual act by using force against B.L., or attempted to knowingly engage in a sexual act with B.L. by using force against B.L.; and

(2) The offense was committed at a Federal Prison.

*See* 18 U.S.C. § 2241(a).

A.   First Element: Using Force to Knowingly Cause B.L. to Engage in a Sexual Act, or Attempting to Do So

The United States Code defines "sexual act" for purposes of the aggravated sexual abuse statute to include penetration, however slight, of the anus by the penis; contact between the mouth and the penis, or the mouth and the anus; and the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.   18 U.S.C. § 2246(2).   Case law describes the level of force necessary as that which is "sufficient to overcome, restrain, or injure the victim."   *United States v. Buckley*, 195 F.3d 1034, 1035 (8th Cir. 1999).

The United States anticipates that its evidence will show that the defendant pushed, hit, restrained, and overcame B.L. to penetrate B.L.'s mouth and anus with the defendant's penis. This evidence includes (1) the victim's testimony; (2) the testimony of medical professionals who treated the victim; and (3) physical evidence.

B. <u>Second Element:   Federal Jurisdiction</u>

18 U.S.C. § 2241(a) specifically lists federal prisons as satisfying the jurisdictional element of the statute.   The government anticipates that this element will be undisputed.

III.   *Counts Three and Four: Sexual Abuse of a Ward*

Counts Three and Four of the Indictment charge the defendant with sexually abusing a ward in violation of 18 U.S.C. § 2243(a).   Count Three addresses the May 2018 incident described above while Count Four addresses the March 2018 incident.   To convict the defendant of each of these counts, the United States must prove beyond a reasonable doubt that, on each occasion:

(1) The defendant knowingly engaged in a sexual act with B.L., or attempted to knowingly engage in a sexual act with B.L.;

(2) At the time, B.L. was in official detention at the Federal Correctional Institution at Petersburg; and

(3) At the time, B.L. was under the custodial, supervisory or disciplinary authority of the defendant.

18 U.S.C. § 2243(b).

For Counts Three and Four, the government need not show that the sexual act was nonconsensual (in contrast to Count One) or accomplished through force (in contrast to Count Two).   The government anticipates that the above-discussed evidence of the May 2018 incident will establish the first element of Count Three.   The government's evidence establishing the first

element of Count Four includes (1) the victim's testimony; (2) DNA evidence recovered from a sweatshirt the victim will testify he was wearing during this earlier assault; and (3) the testimony of medical professionals to whom the victim reported the earlier assault.

The government anticipates that the second and third elements will be undisputed. *United States v. Solorzano*, No. CRIM. 06-922JBS, 2008 WL 5451040, at *4 (D.N.J. Dec. 30, 2008) ("[I]f Defendant was delegated power over the oversight or the confinement and/or restraint of [inmate-victims] at the time he engaged in sexual activity with these inmates, then his conduct fell squarely within the plain language of section 2243(b).").

### IV.    *Count Five: False Statements*

Count Five charges the defendant with making material false statements to federal agents, in violation of 18 U.S.C. § 1001.   To convict the defendant of this count, the United States must prove:

(1) The defendant made a false, fictitious, or fraudulent statement or representation to the government as detailed in Count Five of the Indictment;

(2) In making the false, fictitious, or fraudulent statement, the defendant acted willfully, knowing that the statement was false;

(3) The statement was made in a matter within the jurisdiction of the executive branch of the government of the United States; and

(4) The statement made by the defendant was material to the Federal Bureau of Investigation and/or the Office of the Inspector General.

*See, e.g.*, *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012) ("To obtain a conviction under [§ 1001], the government must prove that: (1) the defendant made a false statement in a matter involving a governmental agency; (2) the defendant acted knowingly or willfully; and (3)

the false statement was material to a matter within the jurisdiction of the agency."). The government anticipates that the third and fourth elements will be undisputed.

The Indictment charges two false statements. First, the defendant falsely denied that he engaged in a sexual act with any inmate at any time at FCI-Petersburg. Second, the defendant falsely stated that on May 10, 2018, he attempted to use a computer and printer while he was engaged in "just conversation" with inmate B.L. when they were alone in an unattended office with no surveillance cameras. The jury need only agree on one of these statements to convict the defendant of this count.

The government's evidence on this count will include the testimony of one of the federal agents who conducted the voluntary interview of the defendant, the audio recording of the interview or excerpts thereof, and the above-discussed evidence of the defendant's sexual assaults.

### Summary of Evidence

The government's evidence may consist of:

(A)     testimony from the victim in the charged incidents, B.L.;

(B)     testimony from victims D.N. and G.L.;

(C)     testimony from approximately six correctional officers who spoke with the victim and/or the defendant after the assaults;

(D)     testimony from approximately four medical professionals who treated B.L. after the assaults;

(E)     reports written by correctional and hospital staff regarding the assaults;

(F)     physical evidence, including the victim's clothing and surveillance footage;

(G)     diagrams and photographs of the facility; and

(H)     expert testimony regarding DNA, sexual assault, and Bureau of Prisons computer systems.

**Potential Evidentiary Issues**

The United States filed three motions *in limine* addressing (1) impermissible "good character" evidence regarding the defendant; (2) impermissible "bad character" evidence regarding the victims and other witnesses; and (3) the defendant's statements.   Dkt. 44–46.   The defendant responded, in part, that he will comply with the evidentiary rules addressed therein. Dkt. 47–49.   The United States has not received any pretrial discovery production of evidence that defendant intends to use at trial, nor has defendant filed any motions *in limine*.   In the absence of any defense discovery or motions *in limine*, the United States submits the following evidentiary matters for the benefit of the Court based on the information available to it.

I.      *Admissibility of B.L.'s Statements to Medical Treatment Providers and Medical Records*

The United States anticipates eliciting testimony and admitting exhibits regarding B.L.'s statements to medical treatment providers about the sexual assaults and their physical and mental health effects.   B.L. described the assaults and his symptoms to treatment providers including (1) a paramedic at FCI-Petersburg; (2) a psychologist at FCI-Petersburg; and (3) two sexual assault nurse examiner (SANE) nurses.   These medical professionals wrote reports.   The treatment providers' testimony and reports as to B.L.'s statements are non-hearsay pursuant to Federal Rule of Evidence 803(4), because they contain statements "made for—and [] reasonably pertinent to— medical diagnosis or treatment; and [which] describe[] . . . past or present symptoms or sensations; their inception; or their general cause."   Fed. R. Evid. 803(4).   "The two-part test set forth for admitting [] hearsay statements [pursuant to 803] is (1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the

statement must be such as is reasonably relied on by a physician[1] in treatment or diagnosis." *Morgan v. Foretich*, 846 F.2d 941, 949 (4th Cir. 1988) (internal quotation marks omitted).

First, B.L.'s motive in making statements to treatment providers was consistent with the purposes of promoting treatment, because B.L. sought and received medical treatment and diagnoses because of the assaults.  *See United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) ("[A] fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription.").  For example, the paramedic's report indicates that B.L. sought over-the-counter pain relief, submitted to blood pressure and heart rate monitoring, and had laboratory testing ordered for sexually transmitted infections (STIs).  The psychologist's report indicates that B.L. sought and received crisis counseling from her.  *See Willingham v. Crooke*, 412 F.3d 553, 562 (4th Cir. 2005) (recognizing that the exception applies to statements for treatment for "emotional trauma" as well as treatment for physical injuries).  The SANE nurses' report indicates that B.L. accepted prophylactic STI treatment, among other services.  B.L.'s statements squarely meet the rationale of the rule, which "relies upon the patient's strong motive to tell the truth because diagnosis or treatment will depend in part upon what the patient says."  *United States v. Iron Shell*, 633 F.2d 77, 83–84 (8th Cir. 1980).

Second, the treatment providers reasonably relied on B.L.'s statements in treatment and diagnosis.  *See Morgan*, 846 F.2d at 949.  The treatment providers will testify, and their records reflect, that they asked B.L. to describe the details of the assaults and his symptoms, because such descriptions were essential to their diagnoses and treatment.  For example, the providers needed to know the details of the sexual acts to determine whether and where to test the victim for STIs,

---

[1] *Morgan*, 846 F.2d at 949 n.17, recognizes that statements to psychologists and providers other than physicians are also admissible under the exception.

to determine whether to offer prophylactic treatment for such infections, to evaluate the victim for physical and mental trauma, to identify any immediate safety concerns such as bleeding or suicidal ideation, and to assess the victim's future safety.   The paramedic and SANE nurses relied upon B.L.'s account to physically examine him, order STI testing, and provide medication.   The psychologist relied upon B.L.'s account to diagnose him, provide him with crisis counseling, and discuss anxiety management.

The two-part test is satisfied even if B.L. and the providers acted with the dual purpose of collecting and preserving evidence.   *See, e.g.*, *Iron Shell*, 633 F.2d at 84 (holding that statements to provider who simultaneously sought to provide treatment and preserve evidence were admissible under the rule).   So long as the statements were *consistent* with the purpose of receiving medical treatment, they satisfy the exception, even if the victim and the providers were also aware that his statements might be pertinent to a criminal investigation.   Courts have repeatedly recognized that statements made to SANE nurses and other forensic examiners are admissible under the rule because they are "relevant to understanding the nature and scope of the abuse and [are] also pertinent to deciding what treatment and counseling may be necessary." *United States v. Harry*, 20 F. Supp. 3d 1196, 1237 (D.N.M. 2014); *see also, e.g.*, *United States v. Tome*, 61 F.3d 1446, 1451 (10th Cir. 1995) (victim's statements to provider who examined victim "for the purpose of offering a second opinion as to whether the [victim] had been sexually abused" were admissible); *United States v. Chaco*, 801 F. Supp. 2d 1200, 1213 (D.N.M. 2011) (victim's statements "made during the course of a sexual assault examination as part of an investigation into allegations of sexual abuse months after the abuse was alleged to have occurred" were admissible because they "were reasonably pertinent to diagnosis or treatment . . . [and] made [while the provider] was assessing the victim's physical condition and well-being.").

The entirety of B.L.'s statements, including his identification of the defendant as his assailant, are admissible under the exception.[2]   Many courts, including the Fourth Circuit, have recognized that a statement identifying the perpetrator of sexual abuse may be reasonably pertinent to medical treatment and therefore covered by the exception.   *See, e.g.*, *Morgan*, 846 F.2d at 949; *accord Renville*, 779 F.2d at 436; *In re Moore*, 165 B.R. 495, 499 (M.D. Ala. 1993).   Although many of these cases involve child sexual abuse, "the identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case, even those not involving children." *United States v. Joe*, 8 F.3d 1488, 1494 (10th Cir. 1993).   B.L. lived at FCI-Petersburg.   His treatment providers needed to know the identity of his assailant, first, to ensure the victim was not left in a "dangerous environment" with him.   *Id.* at 1495.   B.L. will testify that this was the very reason he reported the assaults:   He no longer felt safe at FCI-Petersburg and urgently needed to be separated from the defendant.   Second, "[s]exual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser."   *United States v. George*, 960 F.2d 97, 99 (9th Cir. 1992).   The providers will testify that the identity of B.L.'s attacker was relevant to their treatment.[3]

The providers' reports are accordingly admissible insofar as they reflect these statements, and the rest of their reports are admissible as business records.   *See* Fed. R. Evid. 803(6) (describing business records exception).   Specifically, the providers will testify that (1) they had knowledge and made their reports at or near the time of acts, events, conditions, opinions, or

---

[2]   These identification statements are also admissible as non-hearsay pursuant to Rule 801(d)(1)(C), because B.L. will testify and be available for cross-examination, as discussed below.

[3]   Aspects of B.L.'s statements are also admissible under other exceptions, as discussed below. But his statements in their entirety to medical treatment providers are admissible under this exception.

diagnoses; (2) the records were kept in the course of their regularly conducted business activity; (3) making such records is a regular practice of that activity; (4) the witnesses are qualified to so testify; (5) and there are no indicia of untrustworthiness.   *See id.*   "[B]usinesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful."   *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000).   In particular, "hospital [and other medical] records are deserving of a presumption of accuracy even more than other types of business entries." *Thomas v. Hogan*, 308 F.2d 355, 361 (4th Cir. 1962).

Courts, including those within the Fourth Circuit, routinely admit medical records under this exception.   *See, e.g.*, *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 517 (D. Md. 2012) ("[R]ecords kept by hospitals and doctors often fit the Rule 803(6) exception and are routinely admitted."); *Sunkett v. Nat'l Gypsum Co.*, No. CIV. 09-0721 RMB/JS, 2011 WL 6719776, at *16 (D.N.J. Dec. 21, 2011) ("As a general matter, the Court notes that medical records of treating health care providers are typically admissible under the business records exception to the hearsay rule.").   The paramedic's report, the psychologist's report, and the victim's hospital records satisfy the requirements of the exception and the government plans to lay proper foundation for their admission.

II.   <u>Admissibility of B.L.'s Outcry Statements to Non-Medical Providers</u>

The government also anticipates eliciting testimony that reflects B.L.'s outcry statements regarding the charged offenses pursuant to several hearsay exceptions, to include (1) the state-of-mind exception; (2) the excited-utterance exception; and (3) the exception for prior consistent statements.

A.   <u>Admissibility of B.L.'s Descriptions of His Then-Existing State of Mind</u>

The government anticipates that witnesses will testify that B.L. contemporaneously described his then-existing state of mind and physical and emotional sensations he experienced as a result of the assault.   *See* Fed. R. Evid. 803(3) (excepting from the rule against hearsay "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)"). Specifically, correctional officers will testify that, after the May assault, B.L. said (1) he felt regret about reporting the assaults and feared the future consequences of his reporting, such as his transfer to another facility and retaliation by correctional officers; (2) he felt pain in his anus; and (3) he felt anxiety.

Such statements are non-hearsay, because they satisfy the three requirements for invoking this exception.   *See United States v. Srivastava*, 411 F. App'x 671, 684 (4th Cir. 2011).   First, the statements were "contemporaneous with the mental state sought to be proven."   *Id.*   B.L. was describing then-existing physical and emotional sensations, rather than past experiences, when he made these statements.   Second, there are "no suspicious circumstances suggesting a motive for the declarant to fabricate or misrepresent his or her thoughts."   *Id.*   To the contrary, B.L. made these statements to seek the help and support of correctional officers.   Finally, "the declarant's state of mind [is] relevant to an issue in the case."   *Id.*   B.L.'s disincentives to report the assaults, and the physical and emotional anguish he experienced as a result, are directly related to the charged conduct, including to the bodily injury finding.   *See United States v. Hanna*, 353 F. App'x 806, 809 (4th Cir. 2009) (upholding admission of "expressions of [] general fear and distress" under Rule 803(3)).

B.  <u>Admissibility of B.L.'s Initial Report</u>

The first correctional officer to whom B.L. reported the assault will testify that B.L. uncharacteristically burst into his office without knocking and blurted out that an officer had sexually assaulted him.   While this statement is admissible when offered to show the effect it had on the officer, *see, e.g.*, *United States v. Guerrero-Damian*, 241 F. App'x 171, 173 (4th Cir. 2007) ("A statement is not hearsay if it is offered to prove knowledge, or show the effect on the listener or listener's state of mind.") (citing *United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988),[4] it is also admissible as an excited utterance.

B.L.'s descriptions of the forceful, violent sexual assault he experienced minutes earlier are falls within the Rules' excited-utterance exception to hearsay.   *See* Fed. R. Evid. 803(2) (excepting from the rule against hearsay statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused").   "To qualify as an excited utterance, the declarant must (1) have experienced a startling event or condition and (2) reacted while under the stress or excitement of that event and not from reflection and fabrication." *Morgan*, 846 F.2d at 947.   There is no question the forceful sexual assault was a startling event. *See id.* (expressing "little doubt" that sexual assault qualifies as a startling event).   *Morgan* recites five factors for determining whether the declarant reacted under the stress of the event; taken together, these factors militate in favor of applying the exception here.

The evidence shows that B.L. was reacting under the stress of the assault when he reported it to the officer.   The first factor, "[t]he lapse of time between the event and the declarations," favors admission.   Less than an hour had passed between the assault and the victim's report

---

[4]  All of B.L.'s outcry statements to correctional officers regarding the sexual assaults are admissible for this purpose.   Officers will testify that they implemented protocols and took other steps as a result of B.L.'s statements.

thereof.  *See id.* (concluding that a lapse of three hours was "well within the bounds of reasonableness" in sexual abuse case).   While the second factor, the victim's age, is neutral, the third factor, the victim's physical and mental state, also militates in favor of applying the exception.  Witnesses will testify that B.L. appeared agitated and anxious during and after his initial report of the assault.   The paramedic's medical report, discussed above, reflects that, after B.L. made the statement in question, he remained anxious and his blood pressure was still elevated.   The final *Morgan* factors—"the characteristics of the event" and "the subject matter of the statements"— also support applying the exception.  *Morgan*, 846 F.2d at 947.   The event was a violent sexual assault involving forced oral and anal penetration by a correctional officer who maintained custody and control over the victim.   The subject matter of the statement was the assault itself.   Under these circumstances, B.L.'s statement to the first correctional officer to whom he reported the assault was made while he was "still under the stress of the event" and is therefore admissible. *United States v. Jennings*, 496 F.3d 344, 350 (4th Cir. 2007) (upholding admission of statements regarding sexual assault made between five minutes and one to two hours after the assault where evidence showed victim was still upset).

### C.  Prior Consistent Statements

The government anticipates that B.L.'s outcry statements about the assaults will be admissible as prior consistent statements pursuant to Federal Rule of Evidence 801(d)(1)(B). That rule allows admission of a such statements when offered to rebut any suggestion that a declarant-witness who is available for cross-examination "acted from a recent improper influence or motive" in testifying, or—following a recent amendment—"to rehabilitate the declarant's credibility as a witness when attacked on another ground."   *See id.*; *see also id.* Advisory Comm. Notes ("The intent of the amendment is to extend substantive effect to consistent statements that

rebut other attacks on a witness—such as the charges of inconsistency or faulty memory."); *United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (describing amendments to Rule).   The government anticipates that B.L. will testify.   The crux of the defense case will likely be that B.L. is lying and not credible.   If and when the defendant attacks B.L.'s credibility as a witness, the government will move to admit his prior consistent statements under the Rule.

The government also anticipates that B.L.'s identification of the defendant as his assailant will be admissible as non-hearsay pursuant to Rule 801(d)(1)(C).   That Rule exempts from the rule against hearsay a statement by declarant-witness available for cross-examination in which the witness "identifies a person as someone the declarant perceived earlier."; *see United States v. Foster*, 652 F.3d 776, 788 (7th Cir. 2011) (agent's testimony about a witness's out-of-court identification of defendant was admissible non-hearsay "so long as [the witness] testified at trial and was subject to cross-examination concerning that identification.").

## Conclusion

Accordingly, the United States respectfully submits this trial brief.

<div style="margin-left: 50%;">

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:      _____/s/_____

Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Thomas.A.Garnett@usdoj.gov

_____/s/_____

Kathryn E. Gilbert
Trial Attorney

</div>

Criminal Section
Civil Rights Division
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

<div style="margin-left: 50%;">

_____/s/_____

Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Thomas.A.Garnett@usdoj.gov

</div>