IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:19-cr-00104 |
| | ) | |
| CHIKOSI LEGINS, | ) | |
| | ) | |
| *Defendant*. | ) | |

**GOVERNMENT'S POSITION ON STATUTORY MAXIMUM
APPLICABLE TO DEFENDANT'S COUNT FIVE CONVICTION**

The United States responds to the Court's Order of February 18, 2020 (Dk. No. 130), which directed the United States to brief its position as to the statutory maximum sentence applicable to the defendant's conviction on Count Five of the Indictment – that is, False Statements, in violation of Title 18, United States Code, Section 1001(a)(2). The defendant's false statements were directly related to offenses prosecutable under Chapter 109A of United States Code, and as such, are punishable by a statutory maximum sentence of eight years' incarceration. The United States' misstatement of the applicable statutory maximum at the defendant's July 2019 arraignment hearing did not deprive the defendant of any substantive right or otherwise prejudice the defendant, who pleaded not guilty to the Indictment. Finally, in any event, any error at the arraignment hearing was clearly harmless, given the defendant's decision to proceed to a jury trial wherein he faced four other counts that *each* carried statutory maximum sentences significantly higher than that which the defendant faced on Count Five.

**ARGUMENT**

1. *Applicable Statutory Maximum*

A review of the relevant statutory language makes clear that the defendant is subject to

Section 1001's eight-year statutory maximum on his Count Five conviction. In order to be convicted pursuant to 18 U.S.C. § 1001, a defendant must have uttered the false statement in question "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."

The Supreme Court has expressly held that Section 1001 "embraces false statements made 'in any matter within the jurisdiction of any department or agency of the United States.' *A criminal investigation surely falls within the meaning of 'any matter*,' and the FBI and the Secret Service equally surely qualify as 'department[s] or agenc[ies]of the United States.'" *United States v. Rodgers*, 466 U.S. 475, 479 (1984) (emphasis added). In the defendant's case, the FBI was assisted by the Department of Justice's Office of the Inspector General (OIG) – which is to say, the FBI's sister agency, and co-equally an "agency of the United States." The FBI and OIG investigation into the defendant's alleged sexual misconduct while employed as a federal correctional officer, therefore, constituted a "matter" as contemplated by Section 1001.

Section 1001 imposes an eight-year statutory maximum when the following condition is met: "If the matter relates to an offense under chapter 109A …, then the term of imprisonment imposed under this section shall be not more than 8 years." The Supreme Court has explained that "the phrase 'relate to' is 'deliberately expansive.'" *Smith v. United States*, 508 U.S. 233, 237 (1993) (quoting *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 (1992)). *Cf. Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 38 (1996) ("[W]ords 'relate to' have 'broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'if it has a connection with or reference to such a plan.'") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). Obviously, a "matter"—here, the FBI/OIG investigation—"relates to" Chapter

109A offenses when the investigation seeks to determine whether Chapter 109A offenses occurred. In this case, there is no dispute that the FBI's investigation was predicated on precisely such Chapter 109A offenses.[1]

First, the investigation resulted in an indictment that explicitly alleged three separate violations of Chapter 109A – in Count One, a violation of 18 U.S.C. § 2241(a); and in Counts Three and Four, separate violations of 18 U.S.C. § 2243(b).  Second, the evidence at trial established that federal agents informed the defendant at his June 5, 2018 interview that the purpose of the interview was to investigate allegations that the defendant, during his employment as a federal correctional officer at FCI Petersburg, had (1) engaged in sex with an inmate and (2) used force to do so – which is to say, alleged conduct that encompassed both the aforementioned Chapter 109A offenses.[2]

The defendant's violation of 18 U.S.C. § 1001(a)(2) (and his concomitant exposure to that statute's applicable eight-year statutory maximum) was complete when – having been first placed under oath and repeatedly and explicitly warned of § 1001's consequences for false statements – he proceeded to lie to federal agents questioning him about matters related to those agents' investigation into potential violations of Chapter 109A of federal code: to wit, whether the

---

[1]     Chapter 109A – titled "Sexual Abuse" – encompasses Sections 2241 through 2248 of Title 18, to include Aggravated Sexual Abuse (§ 2241), Sexual Abuse of a Minor or Ward (§ 2243), and Abusive Sexual Contact (§ 2244).

[2]     While Section 1001 liability is predicated only the *existence* of an investigation (*i.e.*, a "matter"), it is worth noting that the jury's verdict form noted the jury's explicit finding that the defendant had lied about engaging in a sexual act with an inmate at FCI Petersburg – again, conduct that necessarily encompasses a Chapter 109A offense (at a minimum, *e.g.*, § 2244, Abusive Sexual Contact).  Of course, the defendant's denial of such illegal activity necessarily came in response to the federal agents' *questioning* about such illegal activity, further demonstrating the specific nature of the federal investigation in question.

defendant had engaged in sexual activity with an inmate at FCI Petersburg.[3]

### 2. *Impact of Arraignment Recitation of Statutory Penalties*

At the defendant's arraignment on July 30, 2019, the government recited the statutory maximums for each of the Indictment's five counts. When summarizing the potential penalties for Count 5 (the False Statements charge), the government incorrectly cited five years as the applicable statutory maximum. This was a mistake on the government's part, but one that carried no practical consequences for the defendant, who pleaded not guilty and demanded a jury trial on all five counts of the Indictment.

As an initial matter, the defendant has no statutory right to be informed of the potential statutory penalties he faces at an arraignment hearing. Federal Rule of Criminal Procedure 10, which governs arraignments, requires only three succinct steps: First, the defendant must be provided with a copy of the indictment; second, the defendant must be advised of the substance of the charges against him (a reading of the indictment suffices); and third, the Court must ask the defendant to enter a plea. Fed. R. Crim. Pro. 10; *United States v. Jackson*, 423 F. App'x 329, 331 (4th Cir. 2011) ("Under Fed. R. Crim. P. 10(a), an arraignment must be conducted in open court and must consist of: ensuring the defendant has a copy of the indictment or information; reading the indictment or information to the defendant; and asking the defendant to enter a plea to the indictment or information."); *cf. United States v. Brooks*, 84 F. App'x 345, 347 (4th Cir. 2004) ("Under Rule 10, the district court was not obligated to inform him of the minimum punishment he faced.").

Because the statutory requirements of an arraignment hearing – and the corresponding

---

[3]  "The *mere filing of a false statement constitutes an offense* under the statute. Loss or damage to the government is not an essential element of the crime." *United States v. Godel*, 361 F.2d 21, 24 (4th Cir. 1966) (emphasis added).

responses required of a defendant – are few and discrete, such hearings are not as demanding as plea hearings and seldom provide a basis for vacating a conviction.[4] As long as the defendant decides to plead not guilty at the close of his arraignment, the Fourth Circuit has treated errors at arraignment hearings – to include, e.g., the defendant's *absence* from the hearing, or his lack of counsel at the hearing – as either harmless error, or simply waived. *See*, *e.g.*, *United States v. Beaty*, 203 F.2d 652 (4th Cir. 1953); *United States v. Owen*, 407 F.3d 222, 229 (4th Cir. 2005). The appellate courts' reasoning is straightforward: because the defendant has "pleaded not guilty and requested a jury trial, he did not waive any rights at the arraignment, and he was left free to enter into subsequent plea negotiations if he so desired." *Owen*, 407 F.3d at 229.

Indeed, even a total failure to conduct an arraignment may be harmless. "A failure to arraign only warrants a reversal if it causes prejudice or impairs a substantial right." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998) (citing *Garland v. Washington*, 232 U.S. 642 (1914)); *accord United States v. Romero*, 640 F.2d 1014, 1015 (9th Cir. 1981); *United States v. Rogers*, 469 F.2d 1317, 1317-18 (5th Cir. 1972). Even if there had been some technical noncompliance with Rule 10 here, failure to raise noncompliance with Rule 10 before trial also results in a waiver. *See, e.g., United States v. Wilford*, 689 F. App'x 727, 729 (4th Cir. 2017); *United States v. Solomon*, 581 F. App'x 270, 272-73 (4th Cir. 2014).

In this instance, the government's mistake on a matter not covered by Rule 10 was trivial and nonprejudicial, especially in light of the types of excusable missteps discussed in the cases above. There is no allegation that any other aspect of the defendant's arraignment was lacking, and the first *four* sets of potential statutory maximum sentences the defendant listened to at the

---

[4] Rule 11, which governs plea hearings, carries far more stringent requirements, for the simple reason that a Rule 11 hearing is a proceeding that *does* entail (requires) the defendant's admission of guilt, surrender of trial rights, and acceptance of the immediate concomitant legal consequences of those admissions and waivers.

5

hearing were correct – and illustrative of the fact that Count Five was (literally) the least of the defendant's concerns. Counts One and Two carried potential sentences of life imprisonment; Counts Three and Four, up to 15 years. Harmlessness doctrine is mandatory, *see*, *e.g.*, *Hasting v. United States*, 461 U.S. 499, 505 (1983), and the defendant can show no harm.

To demonstrate some scintilla of resultant prejudice from the government's misstatement, the defendant would need to assert that had he learned at his arraignment hearing that he faced a potential sentence of eight years, not five, on Count Five – a difference of three years – he would have been jolted into re-calculating the risks of proceeding to trial, and would have instead decided to plead guilty to additional charges carrying potential *life* sentences. The argument (if raised) would be ludicrous.

The government's misstatement of the statutory maximum for Count Five in July of 2019 had no practical or legal effect on any subsequent hearing or proceeding – to include the defendant's upcoming sentencing. Even assuming, solely *arguendo*, that the misstatement constituted error, because it "had no discernible influence whatsoever on the proceedings," any such error was abundantly "harmless beyond a reasonable doubt." *Owen*, 407 F.3d at 229.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that the statutory maximum applicable to the defendant's Count Five conviction is eight years of imprisonment; and that the government's misstatement of the applicable statutory maximum for Count Five at the defendant's July 2019 arraignment hearing – at which the defendant entered a plea of not guilty and demanded a jury trial on all five counts of the Indictment – does not prevent the United States from seeking, or the Court from delivering, such a sentence.

Respectfully Submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:     /s/
Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax:    804-771-2316
Email: Thomas.A.Garnett@usdoj.gov

_____

Kathryn E. Gilbert
Trial Attorney
Civil Rights Division

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2020, I electronically filed the foregoing motion using the Court's CM/ECF system, which will send an electronic notification of such filing (NEF) to all counsel of record.

/s/
Thomas A. Garnett
Assistant United States Attorney
Virginia Bar No. 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Email: Thomas.A.Garnett@usdoj.gov