IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                Criminal No. 3:19cr104 (DJN)

CHIKOSI LEGINS,
        Defendant.

**MEMORANDUM OPINION**

On July 24, 2019, a grand jury returned an indictment against Defendant Chikosi Legins ("Defendant"), charging Defendant with five offenses, including four counts related to alleged sexual acts between Defendant — a correctional officer — and an inmate at the Federal Correctional Institution, Petersburg ("FCI Petersburg"), and one count of knowingly and willfully making materially false, fictitious or fraudulent statements to agents of the Federal Bureau of Investigation ("FBI") and the Department of Justice, Office of the Inspector General ("OIG") during the investigation of those alleged offenses in violation of 18 U.S.C. § 1001. On February 12, 2020, after considering all of the evidence presented during trial, a jury returned a verdict of not guilty on the first four counts and a verdict of guilty on the § 1001 count, Count Five. (ECF No. 123.)

This matter now comes before the Court on Defendant's Motion to Set Aside Verdict (ECF No. 135), moving the Court pursuant to Federal Rule of Criminal Procedure 29(c) to set aside the jury's guilty verdict on Count Five. For the reasons set forth below, the Court DENIES Defendant's Motion (ECF No. 135).

## I. BACKGROUND

### A. Indictment and Trial

On July 24, 2019, a grand jury returned an indictment against Defendant, charging him with five offenses. Specifically, in Count One, the Indictment charged Defendant with depriving the alleged victim, B.L., "of the right, secured and protected by the Constitution and laws of the United States, not to be subjected to cruel and unusual punishment" while acting under color of law in violation of 18 U.S.C. § 242 by subjecting B.L. to aggravated sexual abuse and attempted aggravated sexual abuse that resulted in bodily injury. (Indictment (ECF No. 3) at 2.) Count Two charged Defendant with aggravated sexual abuse and attempted aggravated sexual abuse in violation of 18 U.S.C. § 2241(a), alleging that Defendant used force and attempted to use force against B.L. to penetrate B.L.'s mouth and anus with his penis. (Indictment at 2.)

In Counts Three and Four, the Indictment charged Defendant with sexual abuse of a ward in violation of 18 U.S.C. § 2243(b) for two separate incidents involving Defendant and B.L., namely: (1) a May 10, 2018 incident in which Defendant allegedly penetrated B.L.'s mouth and anus; and, (2) a March 16, 2018 incident in which Defendant allegedly penetrated B.L.'s mouth. (Indictment at 3.) Finally, Count Five charged Defendant with making two materially false, fictitious or fraudulent statements to FBI and OIG investigators in a matter within the jurisdiction of those agencies, specifically: (1) falsely denying that he engaged in a sexual act with any inmate at any time at FCI Petersburg (the "sexual acts denial"); and, (2) falsely stating that on May 10, 2018, he attempted to use a computer and printer while engaged in "just conversation" with B.L. when they were alone in an unattended office with no surveillance cameras (the "computer use alibi"). (Indictment at 4.)

Following his indictment and arrest, on July 25, 2019, Defendant appeared before the undersigned for his initial appearance, (ECF No. 8), and, during his July 30, 2019 arraignment, Defendant entered a plea of not guilty to all counts in the Indictment, (ECF No. 11). The Court then scheduled the case for a jury trial beginning September 30, 2019, before Senior United States District Judge Robert E. Payne. (ECF No. 11.) On August 19, 2019, Judge Payne granted Defendant's First Motion to Continue (ECF No. 18) and continued trial until November 18, 2019. (ECF No. 25.)

On October 21, 2019, Judge Payne reassigned this case to the undersigned upon the undersigned's confirmation and appointment as a United States District Judge. (ECF No. 35.) After reassignment, the Court granted Defendant's Second Motion to Continue (ECF No. 37) and continued the trial until February 6, 2020. (ECF No. 38.) Trial commenced with jury selection on February 6, 2020, (ECF No. 109), and continued until closing arguments on February 11, 2020, (ECF Nos. 118-19, 121), when the jury retired for deliberations. The jury returned a verdict on February 12, 2020. (ECF No. 122.)

After considering the evidence presented during trial and the Court's Final Instructions (ECF No. 127-1), the jury returned a verdict of not guilty on Counts One, Two, Three and Four and a verdict of guilty on Count Five. (Verdict Form ("Verdict") (ECF No. 123).) In finding Defendant guilty on Count Five, the jury marked that both false statements alleged in the Indictment supported its verdict. (Verdict at 3.) Based on the jury's verdict, the Court found Defendant guilty of the allegations in Count Five and scheduled this matter for sentencing on June 9, 2020. (Sentencing Guidelines Order (ECF No. 124).)

### B. Defendant's Motion

Following the jury's verdict, on February 12, 2020, the Court ordered briefing on the issue of whether the statements sustaining the guilty verdict on Count Five constitute materially false, fictitious or fraudulent statements in light of the not guilty verdicts on the remaining counts. (Order (ECF No. 126).) In response, Defendant filed his instant Motion to Set Aside Verdict. (Mot. to Set Aside Verdict ("Def.'s Mot.") (ECF No. 135).) In support of his Motion, Defendant challenges each of the statements that supported the jury's guilty verdict on Count Five. (Def.'s Mot. at 4-8.)

As to Defendant's sexual acts denial, Defendant argues that such a denial cannot support a guilty verdict. (Def.'s Mot. at 4-5.) Defendant notes that the Court's Final Instructions defined "sexual act" only in terms of Counts One, Two, Three and Four, which required evidence that Defendant penetrated B.L.'s mouth or anus. (Def.'s Mot. at 4.) Because the jury found Defendant not guilty of even consensual sexual acts with B.L. according to this definition, and because the evidence presented during trial does not support any instances of sexual acts with anyone other than B.L., Defendant argues that a guilty verdict based on Defendant's sexual acts denial cannot stand. (Def.'s Mot. at 4-5.) And although Defendant concedes that the jury could have based its verdict on "some other unknown or suspected sexual act outside of the Indictment, or a separate act outside the definition of 'sexual act' provided in the Instructions insofar as Count Five did not have a definition for 'sexual act,'" Defendant argues that the jury's not guilty verdicts on the first four counts nonetheless undermines the legitimacy of the verdict based on the sexual acts denial, justifying the setting aside of the verdict. (Def.'s Mot. at 5.)

As for the second false statement that sustained the jury's verdict on Count Five — the computer use alibi — Defendant contends that the evidence introduced during trial does not

support the verdict on that statement, because the testimony of the Government's own expert on the computer system at FCI Petersburg provided that no record of a login attempt would be made if no PIN could be entered, which aligns with Defendant's statement to federal investigators. (Def.'s Mot. at 6-7.) Considering this testimony, Defendant asserts that his computer use alibi "was accurate." (Def.'s Mot. at 7.) And even if the evidence presented supports the falsity of Defendant's alibi, Defendant argues that his alibi proved immaterial to the Government's investigation, because that investigation focused mostly on the other evidence against Defendant — namely, the DNA evidence, statements from witnesses and B.L., and surveillance footage — and therefore Defendant's alibi "would not have caused the [G]overnment to alter its investigation." (Def.'s Mot. at 7-8.)

The Government filed its Response to Defendant's Motion on March 10, 2020, (U.S. Opp. to Def.'s Mot. to Set Aside Verdict ("Gov't Resp.") (ECF No. 143)), and Defendant filed his Reply on March 12, 2020, (Reply Br. to U.S. Opp. to Def.'s Mot. to Set Aside Verdict ("Def.'s Reply") (ECF No. 145)), rendering Defendant's Motion now ripe for review.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 29(c)(1), "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Upon such motion, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). In deciding whether to set aside a guilty verdict, the Court must consider "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Accordingly, "[a]

guilty verdict should be upheld if it is supported by substantial and competent evidence." *United States v. Whyte*, 2018 WL 521593, at *3 (W.D. Va. Jan. 23, 2018) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

In deciding whether substantial and competent evidence exists, the Court should not decide whether the evidence convinces it beyond a reasonable doubt of the defendant's guilt, only whether evidence exists "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). Importantly, the Court may not weigh the evidence, draw inferences from the facts, resolve evidentiary conflicts or assess the credibility of witnesses, for such functions fall within the province of the jury. *United States v. Arrington*, 719 F.2d 701, 704 (4th Cir. 1983). "Further, 'if the evidence supports different, reasonable interpretations, the jury decides the interpretation to believe.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994)). Deference to the jury requires the Court to "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995). Ultimately, a defendant challenging the sufficiency of the evidence supporting his conviction "must overcome a heavy burden." *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995).

### III.     ANALYSIS

Because Defendant challenges each of the statements supporting his conviction on Count Five, the Court will address each statement in turn.

### A. Substantial and Competent Evidence Adduced During Trial Supports the Jury's Guilty Verdict Based on Defendant's Sexual Acts Denial.

As mentioned, Defendant argues that the evidence adduced during trial does not support a guilty verdict on Count Five based on Defendant's sexual acts denial, because such a verdict lacks consistency with the jury's not guilty verdicts on the counts alleging that Defendant engaged in sexual acts with B.L. and the lack of evidence suggesting that Defendant engaged in sexual acts with other inmates. (Def.'s Mot. at 4-5.) The Government responds that the jury's verdict does not necessarily lack consistency, because it could be based on a finding that the charged sexual acts did occur but that the Government failed to prove another necessary element under the other counts. (Gov't Resp. at 5.) And the Government contends that even if the jury reached an inconsistent verdict, that inconsistency does not provide a sufficient basis to set aside Defendant's conviction on Count Five. (Gov't Resp. at 5-6.) The Court agrees with the Government.

Indeed, the Supreme Court in *United States v. Powell*, 469 U.S. 57 (1984), explicitly rejected an inconsistent verdict argument like that raised by Defendant. In *Powell*, the Supreme Court considered the conviction of Betty Lou Powell ("Powell") on three of ten counts arising under federal narcotics laws. 469 U.S. at 59. Specifically, a jury acquitted Powell of conspiring to possess cocaine with intent to distribute and possessing cocaine with intent to distribute but convicted her of using a telephone in "committing and in causing and facilitating" the conspiracy and possession offenses. *Id.* at 59-60 (internal quotations omitted). On appeal, Powell argued that her convictions on the telephone counts could not stand in light of her acquittal on the underlying felonies. *Id.* The Ninth Circuit agreed and set aside Powell's convictions. *Id.* An *en banc* panel reaffirmed this ruling, holding that inconsistent verdicts cannot stand when a defendant has been "acquitted of a felony he is charged with facilitating." *Id.* at 61.

7

The Supreme Court granted certiorari to determine whether the Ninth Circuit's ruling provided a sound exception to its holding in *Dunn v. United States*, 284 U.S. 390 (1932), which held that inconsistent verdicts should not be set aside solely because of their inconsistency. *Id.* The Court reiterated its holding in *Dunn* that "'[c]onsistency in the verdict is not necessary[, because e]ach count in an indictment is regarded as if it was a separate indictment." *Id.* at 62-63. The Court then affirmed that its post-*Dunn* decisions had not eroded this general rule and proceeded to explain why *Dunn's* holding should stand without exception. *Id.* at 63-64.

For one, the Court stressed that "inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense." *Id.* at 65. Indeed, the Court noted, "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* In such circumstances, the Court opined, the jury clearly has not followed the trial court's instructions, but the Government — as well as the defendant — suffers harm, because it cannot appeal the acquittal of the underlying offenses. *Id.* Considering that inconsistent verdicts provide a windfall to neither side, the Court refused to require review of such verdicts "at the defendant's behest." *Id.* And the Court held that *Dunn* recognized "the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercise of power by the Executive Branch." *Id.*

The Supreme Court went further and refused to carve out an exception "that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error worked against them," reasoning that "[s]uch an individualized assessment of the reason for the inconsistency would be based either on pure

8

speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id.* at 66. Instead, the Court held, criminal defendants must rely on a sufficiency-of-the-evidence challenge to set aside an inconsistent jury verdict. *Id.* at 67. Notably, "[t]his review should be independent of the jury's determination that evidence on another count was insufficient." *Id.* Beyond such review, the Court refused to adopt "further safeguards against jury irrationality." *Id.*

Considering the Supreme Court's reasoning in *Powell*, the Court finds Defendant's inconsistent verdict argument unavailing. That the jury found Defendant not guilty on four counts alleging both consensual and nonconsensual sexual conduct between Defendant and B.L. does not undermine its guilty verdict on Count Five based on Defendant's sexual acts denial. Defendant invites the Court to engage in the precise speculation as to the jury's intentions — i.e., lenity, mistake or compromise — that the Supreme Court in *Powell* expressly warned against. Indeed, unlike the predicate and compounding offenses at issue in *Powell*, the inconsistent counts here stand independently, which only strengthens the *Powell* Court's holding. Accordingly, the Court will analyze only whether the evidence adduced during trial proves sufficient to support the jury's guilty verdict on Count Five, without considering the jury's not guilty verdicts on the other counts.

To that end, the Court finds that substantial and competent evidence supports the jury's finding that Defendant made materially false, fictitious and fraudulent statements to FBI and OIG investigators in relation to a matter within their jurisdiction in violation of § 1001 when he denied that he had engaged in sexual acts with any inmate at any time at FCI Petersburg. The Court instructed the jury that a conviction on Count Five required proof beyond a reasonable doubt that: (1) Defendant made a false, fictitious or fraudulent statement or representation to the

9

Government as detailed in the Indictment; (2) Defendant made the statement willfully, knowing it was false; (3) the statement was made in a matter within the jurisdiction of the Executive Branch; and, (4) the statement made by Defendant was material to the FBI and OIG's investigation. (Ct.'s Final Instrs. ("Instr.") (ECF No. 127-1) No. 37.) Defendant stipulated that his statements to FBI and OIG investigators were made in a matter within the jurisdiction of the Executive Branch, and the Court instructed the jury that it should accept all stipulated facts as proven, leaving the Government with the burden to prove the remaining three elements. (Instr. No. 3; Joint Stipulations ("Stipulations") (ECF No. 101) No. 9.) The Government satisfied this burden.

For one, the Government presented substantial and competent evidence that Defendant in fact engaged in sexual acts with an inmate — namely, B.L. — at FCI Petersburg. During the first substantive day of the trial, the Government solicited the testimony of Susan Womble, R.N., who examined B.L. following his accusations of rape against Defendant in May 2018. (Tr. Vol. II ("Tr. II") (ECF No. 136) at 33-69.) Nurse Womble established the authenticity of the swabs collected from B.L.'s mouth, lips and anogenital area. (Tr. II at 55:5-22.) The Court then admitted those swabs into evidence without Defendant's objection. (Tr. II at 56:15; Ex. List of the U.S. ("Gov't Exs.") (ECF No. 114) Nos. 4-A-4-H.)

More importantly, the next day, the Government solicited the testimony of FBI Forensic Examiner Kara Gregor. (Tr. Vol. III ("Tr. III") (ECF No. 137) at 96-158.) Ms. Gregor testified to her analysis of the DNA evidence in this case, including her comparison of the DNA obtained from the swabs collected by Nurse Womble, a profile of Defendant's DNA and a profile of the DNA from B.L.'s boyfriend at the time, R.J. (Tr. III at 109:19-110:10, 110:16-22, 114:1-7; Gov't Ex. No. 15.) Ms. Gregor averred that an analysis of the DNA collected from B.L.'s

anorectal swab provided very strong support — the highest level of support to which FBI examiners may testify — for the inclusion of Defendant's DNA in the sample. (Tr. II at 115:22-116:5, 117:1-6.) And Ms. Gregor excluded R.J. as a potential contributor to the DNA sample gathered from B.L.'s anorectal swab. (Tr. III at 116:6-8.) Moreover, although Ms. Gregor confirmed that her team detected no semen on the anorectal swab, she testified that such a result would not be unusual if the perpetrator ejaculated outside of B.L.'s anus, which aligned with B.L.'s testimony that Defendant ejaculated onto his hand. (Tr. II at 254:21-255:3; Tr. III at 118:1-5.)

Considering this evidence and taking all inferences from it in favor of the Government,[1] the Court finds such evidence sufficient to support a finding beyond a reasonable doubt that Defendant engaged in sexual acts at least once with an inmate at FCI Petersburg, establishing the falsity of his sexual acts denial. Indeed, the additional testimony and evidence introduced by the Government, including other evidence supporting the inclusion of Defendant's DNA in samples taken from B.L.'s sweater, boxer shorts and jock strap, only bolsters the sufficiency of the evidence as to the falsity of Defendant's denial.[2]

As to the remaining elements in dispute — willfulness/knowledge of falsity and materiality — the Court also finds sufficient evidence in the record to support a guilty verdict.

---

[1] In his Reply, Defendant argues that the Government should not "get the benefit of presumption in their favor" in this case, because the jury clearly found the evidence introduced by the Government not credible and unconvincing. (Def.'s Reply at 1-2.) However, Defendant again asks the Court to engage in speculation as to the intentions and reasoning behind the jury's verdict, which Supreme Court precedent expressly prohibits. Accordingly, despite the jury's not guilty verdict on Counts One through Four, the Government may still rely on the presumption in its favor to sustain the guilty verdict on Count Five.

[2] For a more complete outline of the evidence introduced by the Government to support Defendant's conviction on Count Five, see (Gov't Resp. at 3-4).

As the Court instructed the jury, "willfulness" requires proof that Defendant knew the unlawfulness of his conduct in making the false statement, whereas knowledge of falsity requires proof that Defendant knew his statement was false. (Instr. No. 38.) The testimony of Special Agent Johnny Lavender that he warned Defendant several times during his interview that lying to federal investigators constituted a crime satisfied the Government's burden in proving willfulness. (Tr. III at 193:7-22, 198:5-10.) And, on a Rule 29 motion, the Court accepts that the jury made the reasonable inference that the evidence of Defendant engaging in sexual acts with B.L. established his knowledge of the falsity of his statements to the contrary. Likewise, the Court accepts that the jury inferred the materiality of Defendant's sexual acts denial from evidence that the matter within the jurisdiction of the FBI and OIG in relation to which Defendant made that denial revolved around allegations that Defendant committed the precise conduct that he denied. (*See* Instr. No. 38 ("A 'material' statement is one that has the natural tendency to influence governmental action or is capable of influencing governmental action.").)

Because substantial and competence evidence adduced during trial supports the jury's guilty verdict on Count Five at least as to Defendant's sexual acts denial, Defendant has not met his heavy burden to set aside his conviction on that Count. Accordingly, the Court denies Defendant's Motion as to Defendant's sexual acts denial.

> **B.  Substantial and Competent Evidence Adduced During Trial Supports the Jury's Guilty Verdict on Defendant's Computer Use Alibi.**

As mentioned, Defendant contends that the evidence introduced during trial does not support the jury's guilty verdict on Count Five based on Defendant's computer use alibi, because the testimony of the Government's own expert on the computer system at FCI Petersburg provided that no record of a login attempt would be made if no PIN could be entered, which aligns with Defendant's statement to federal investigators that he could not enter his PIN number

on the night in question. (Def.'s Mot. at 6-7.) Defendant further argues that, in any case, such a statement proved immaterial to the Government's investigation, because that investigation focused mostly on the other evidence against Defendant — namely, the DNA evidence, statements from witnesses and B.L., and surveillance footage — and therefore Defendant's statement "would not have caused the [G]overnment to alter its investigation." (Def.'s Mot. at 7-8.)

The Government responds that the testimony of its computer systems expert in fact established the falsity of Defendant's computer use alibi. (Gov't Resp. at 6-7.) And the Government argues that the materiality element does not require proof that a false statement in fact influenced investigators' actions, only that the statement would have a "tendency" to influence such actions, which the evidence of record proves beyond a reasonable doubt. (Gov't Resp. at 7-8.)

The Court finds that substantial and competent evidence adduced during trial supports the jury's guilty verdict on Count Five as to Defendant's computer use alibi. Although Defendant argues that the Government's expert on FCI Petersburg's computer system, Darryl Strausser, testified that no record of a login attempt would be made if an employee failed to enter a PIN number, the transcript of Mr. Strausser's testimony shows that the Bureau of Prisons' ("BOP") system would capture a login attempt even if an employee did not enter a PIN number, so long as the employee completed the first step of the login process and inserted his personal identification, or "PIV," card. (Tr. III at 260:22-261:2.) Mr. Strausser testified that the report of login attempts from the computer in the Fox-South Unit Secretary's Office — the office in which Defendant stated that he attempted to use the computer and printer while engaged in "just conversation" with B.L. — showed no access attempts at all after 6:00 p.m. on May 10, 2018,

13

the time period in question. (Tr. III at 261:3-9, 263:17-264:1.) Mr. Strausser clarified — albeit with some confusion — that the only information the system would not show if an employee entered his PIV card (step one) and failed to enter his BOP number (step two) or PIN number (step three) would be the account associated with the failed login attempt. (Tr. III at 263:23-264:1.)

Based on Mr. Strausser's testimony that BOP records, admitted as Government Exhibit 21, showed no login attempts from either an identified employee or unidentified employee after 6:00 p.m. on May 10, 2018, (Tr. III at 261:3-9), and considering that Defendant told federal investigators that he at least inserted his PIV card into the computer in the Fox-South Unit Secretary's Office when attempting to login after 6:00 p.m. on May 10, 2018, (Tr. III at 198:16-23), a reasonable fact finder could conclude beyond a reasonable doubt that such a representation constituted a false statement.[3] Drawing all reasonable inferences in the Government's favor, for the same reasons given in its analysis of Defendant's first statement, the Court also accepts that sufficient evidence adduced during trial proved Defendant's willfulness in providing his computer use alibi and his knowledge of the falsity of that alibi.

The question then becomes whether, even accepting the falsity of Defendant's computer use alibi, such alibi proved material to the matter within the jurisdiction of the Executive Branch, i.e., the FBI and OIG's investigation into the allegations against Defendant. Defendant contends

---

[3] Defendant also suggests that his statement was not false, because he stated that he only *attempted* to login to the computer in the Unit Secretary's Office, not that he actually logged in. (Def.'s Mot. at 6.) The Court finds this argument inapposite, because the Indictment clearly charges Defendant with making a false statement when he told investigators that he "*attempted* to use a computer," and the jury found that the attempted use constituted a false representation. (Indictment at 4 (emphasis added); Verdict at 3.) Because the evidence introduced during trial proves the falsity of even an attempted use of the computer in question by anyone on the evening of May 10, 2018, no disconnect exists between the evidence and the jury's finding that Defendant's alibi constituted a false statement.

that his computer use alibi did not cause the Government to alter its investigation, because the Government focused primarily on other evidence against Defendant. (Def.'s Mot. 7-8.) However, "[t]he test for materiality is whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action," not whether the statement in fact influenced agency action. *United States v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984). Based on this standard, the Government introduced evidence from which the jury could draw inferences that Defendant's alibi was at least capable of influencing agency action, namely: evidence of the FBI and OIG's surrounding investigation into B.L.'s allegations regarding what happened in the Unit Secretary's Office on May 10, 2018. Indeed, the Sixth Circuit has explicitly rejected the argument that a defendant's false alibi proves immaterial simply because government agents possessed other evidence to prove the alibi's falsity or otherwise ignore it, reasoning that false alibis are "not only . . . capable of influencing the actions of the agents by misdirecting them, that was precisely their intent." *United States v. Brooks*, 379 F. App'x 465, 470-71 (6th Cir. 2010).

Accordingly, the Court finds that Defendant has not met his heavy burden to set aside the jury's verdict based on his computer use alibi and denies Defendant's Motion as to that statement.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion to Set Aside Verdict (ECF No. 135).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date:  March 26, 2020