IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.     Criminal No.: 3:19CR104

CHIKOSI LEGINS,     Defendant

## POSITION ON SENTENCING AND REQUEST FOR VARIANCE

Comes now the defendant, Chikosi Legins (hereinafter "Legins"), by counsel, and advises that he has conferred with the defendant to review the Presentence Report ("PSR") filed by the United States Probation Department. The defendant has raised objections to the guideline range which need to be resolved. Defendant has previously argued that the government should not have been allowed to, post arraignment, increase the maximum penalty for the defendant. The defendant also has raised objections to the use of the cross reference to increase the defendant's exposure to incarceration. Those arguments are referred to and adopted herein, there being no intent to waive or abandon those arguments.

## DISCUSSION AND ANALYSIS

**I. The Advisory Guideline Range is Not to be Presumed Reasonable**

The Supreme Court stated in no uncertain terms that the United States Sentencing Commission's Guidelines ("Guidelines") cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors spelled out in 18 U.S.C. Section 3553(a). Nelson v. United States, 129 S. Ct. 890 (2009) (*per curiam*); Spears v. United States, 129 S.Ct. 840 (2009) (*per curiam*). The Court's decision in Nelson and Spears built upon its earlier decisions in Kimbrough v. United States, 128 S.Ct.558(2007), and Gall v. United States, 128S.Ct.586 (2007), establishing the Guidelines as

simply an advisory tool to be considered alongside the other 18 U.S.C. Section 3553(a) statutory considerations. "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in Nelson, 129 S.Ct. At 892, and "[t]he Guidelines are not only *not mandatory* on sentencing court; they are also not to be *presumed* reasonable. " *Id*. (Emphasis in original).

Although sentencing courts must continue to consider the Guidelines, Congress has *required* federal courts to impose the least amount of imprisonment necessary to account for the considerations and accomplish the sentencing purposes set forth in 18 U.S.C. 3553(a). These include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory Guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. Section 3553(a).

Although a district court must being its analysis by correctly calculating the advisory sentencing range, the sentencing court is then free, in light of the other statutory sentencing factors, to impose an entirely different sentence. This is because, under Rita v. United States, 127 S.Ct.2456, 2465 (2008), a district court is free simply to disagree, based on the 18 U.S.C. Section 3553(a) sentencing factors, with the Guidelines "rough approximation" of the appropriate sentence for any given case. Id.

**II. FACTORS UNDER 18. U.S.C. Section 3553**

    **a. Nature and Circumstances of the Offense.**

The nature of the offense conduct is generally set forth in the "Offense Conduct" incorporated into the Presentence Report ("PSR"). See PSR, para. 11. The defendant has objected to the last line which states that "Further Investigation Revealed that the statements were not true or accurate" insofar as that finding is contrary to the jury's findings.

    **b. History and Characteristics of the Defendant**.

Legins was born in Quens, New York and is one of two children born of the union of his parents. His parents later separated and he has two maternal siblings. (See PSR, para. 38). Legins' father died in 2001 from various health issues. (See PSR, para. 39). Legin's mother is a retired career correctional officer. Legins has maintained daily contact with his mother prior to his incarceration. (See PSR, para. 40).

Legins was born and raised in Queens, New York. Legins' parents were married at the time of his birth, his parents separated before the defendant had any memories of his father. (See PSR, para. 44). Legins stated that he did not know his father until he was 18 years old as his father played no role in his upbringing. Legins' mother was his sole provider throughout his childhood. Legins' mother was involved in a relationship with a boyfriend, but Legins was never close with her boyfriend because he wasn't his biological child. (See PSR, para. 44).

Legins was raised in a low income, working class environment. The family struggled financially, but Legins' said his mother was always able to meet his needs and he always had essential amenities. (See PSR, para. 45). Legis was close with his family growing up and always felt loved at home. Legins noted he had an excellent childhood. (See PSR, para. 47).

Legins joined the United States Army in March, 1998 at age 19. He completed one tour in Kuwait and one tour in Panama. At the time of his honorable discharge from the Army, he was an E-4 Specialist. Legins received medals/ribbons for his overseas service, his foreign service and for his hazardous service. (See PSR, para. 48).

Legins married his second wife, Athena, and they have two children. (See PSR, para. 50). Legins was previously married in 1999, but separated in 2001 and divorced in 2002 due to her infedility while he was deployed. (See PSR, para. 51). Legins and Athena have been married since 2001 and have a 15 year old and a 3 year old. They were involved in a romantic relationship 8 years prior to getting married. (See PSR, para. 52). Athena Legins has a child, Kevin Womble, from a previous relationship, and whom Legins has helped rear. Legins indicated he has been involved in Kevin's life since Kevin was 6 years old. (See PSR, para. 53).

Legins' wife, Athena, indicates that Legins is a well-mannered man who is well-mannered man, loving, caring, patient, loyal and hard working and he is a wonderful father and husband, and always willing to help others in need. She further stated that Legins was a very active member of their church and has never had any negative issues throughout his life and that the current charges are completely out of his character. (See PSR, para. 54).

Legins had lymph nodes removed from his neck due to a diagnosis of cancer in 2018. Legins underwent chemotehrapy from June, 2018 through August, 2018. (See PSR, para. 57). Legins suffers from an improperly fuctioning value in his heart, renal disease, gout, rheumatoid arthritis, tendinitis, high blood pressure and an autoimmune disease that attacks his hair follicles. He was under the care of a cancer specialist, Dr. Miller, at Massey Cancrn Center for his rhematoid arthritis and was scheduled to see a urology specialist prior to his incarceration. (See PSR, para. 59). The defendant has no history of psychological or psychiatric illness, nor has he ever

attempted suicide and has no suicidal thoughts or tendencies. (See PSR, para. 60). Legins has produced a letter from Dr. Jason Kidd, M.D. who advised that Legins' chronic kidney disease has placed him at a higher risk for Covid-19 infection.

Legins first consumed alcohol at the age of 16 and progressed to consuming one or two beers once a year, with his last use in February, 2020. (See para., para. 63). Legins states he has never used any illegal drugs and never participated in any substance abuse program. (See PSR, para. 64).

Legins graduated from John Brown High School in Flushing, New York in 1997. Legins advised he was an above average student. He disclosed that he was in a work program wherein he would go to school one week and then work the next. He did not participate in any sports besides handball, nor any extracurricular activities. (See PSR, para. 68).

Legins worked as a correctional Offier with the Federal Bureau of Prisons at FCI Petersburg from September, 2014 until January, 2019. (See PSR, para. 70). Before that position, he was a Sargeant with the Petersburg Sheriff's Office fom October 21, 2008 through September 17, 2014. Legins left that position to accept employment with the Bureau of Prisons. (See PSR, para. 71). From 2005 through 2008, Legins was a Sheriff's Deputy with the Richmond City Sheriff's Office. Legins left this position to accept the Sheriff position in Petersburg. (See PSR, para. 72). From 2003-2005, Legins was a correctional officer with Sussex I State Prison. (See PSR, para. 73).

Legins had one disciplinary infraction in 2008 where he was a correctional officer at Richmond Sheriff's Department. Other than that infraction, Legins has been continuously reflected as an excellent and/or outstanding employee. The defendant has no adult or juvenile criminal convictions.

**b. The kind of sentences available**.

The only sentence available to the defendant is incarceration if the current guidelines are utilized.

**c. The advisory guideline range**

If the cross-reference is not utilized, the defendant would be a level 18, category I, with a range of 27 to 33. If the guideline range has been calculated properly with the cross-reference, it would create a base level 30, with a criminal history category of I, creating the range of 96 months, restricted.

**d. Disparity**

Legins does not claim that there is an argument for disparity in his favor.

**e. Restitution**

Restitution does not appear to be a factor based on the defendant's inability to pay.

**f. A promotion of respect**

Legins would submit that a sentence of 12 months is sufficient, but not greater than necessary, to punish the defendant. Simply warehousing Legins for an extraordinary amount of time will serve little purpose and the jury's findings on Counts One through Four cannot be ignored. We know that Legins can obtain meaningful employment and be productive in society. We know that Legins has family support, and a family to support.

**g. Motion for Variance**

The government seeks a sentence of 96 months, the maximum available. While the court should not consider the underlying facts in a vacuum, the court also should, respectfully, not ignore the fact that the jury acquitted Legins of all of the conduct which is energizing the government's arguments. A sentence that is sufficient, but not greater than necessary, for obstructing justice

which served as the basis for his charges is all that is necessary. This interview on June 5, 2018 was really more of an attempt to gain a confession, than it was investigation. The officials had already 1) collected and packaged the evidence for DNA analysis, 2) suggested several times in the interview that biological evidence had been obtained, 3) obtained the affidavit from BL, and 4) had collected video footage in support of B.L.'s version. The interview of Legins would have had little impact on their decision to bring charges other than, if Legins had confessed, his confession would have saved the time and expense of the DNA analysis.

At the end of the day, based on the conviction versus the acquitted conduct, the court has before it a defendant from a modest background with a loving family, has worked hard all of his life, served his country honorably in the military both domestically and overseas for two tours, doesn't drink, doesn't consume drugs, is a good husband, a good father, a good step-father, has no prior criminal record, is extremely religious, active in church, but is in poor health, and at an increased risk for COVID19 infection. A sentence of twelve months is adequate for this defendant.

## **CONCLUSION**

Legins respectfully suggests that a sentence of twelve months is sufficient to punish this defendant. A sentence at this level would place the defendant in Zone C which would give the defendant more sentencing options to reduce his risk of infection and get the defendant trained in a different vocation.

Respectfully Submitted,
Chikosi Legins
By:    /s/

7

Charles A. Gavin, Esquire
Virginia State Bar #: 31391
Attorney for Chikosi Legins
Cawthorn, Deskevich & Gavin, P.C.
1409 Eastridge Road
Richmond, VA 23229
(804)288-7999
(804)285-9015 *facsimile*
E-Mail: c.gavin@cawthorn.net

## CERTIFICATE OF SERVICE

I hereby certify that this 16th day of June, 2020, I will electronically file the foregoing the Clerk of the Court using the CM/ECT system which will then send a notification of such filing (NFE) to Stephen E. Anthony, Assistant United States Attorney, and to Patrick H. Raible, U.S. Probation Officer.

By:_____/s/_____
Charles A. Gavin, Esquire
Virginia State Bar #: 31391
Attorney for Chikosi Legins
Cawthorn, Deskevich & Gavin, P.C.
1409 Eastridge Road
Richmond, VA 23229
(804)288-7999
(804)285-9015 *facsimile*
E-Mail: c.gavin@cawthorn.net